IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JASMON STALLINGS,                    )
                                     )
              Plaintiff,             )
                                     )
       v.                            )
                                     )       No. 11 C 8107
MARCUS HARDY, et al.,                )
                                     )
              Defendants.            )
                                     )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff, Jasmon Stallings, has brought this *pro se* civil rights action pursuant to 42 U.S.C.

§ 1983.   Plaintiff alleges that the defendants, Warden Marcus Hardy ("Hardy") and Dr. Ronald

Schaefer, Dr. Parthasarathi Ghosh, and Wexford Health Sources, Inc. (collectively, the "Medical

Defendants"), were deliberately indifferent to his serious medical condition, purportedly caused by

the Stateville prison's serving meat products containing soy.   This matter is before the court for

ruling on Hardy's the Medical Defendants' motions for summary judgment.   For the reasons

stated below, the motions are granted.

LOCAL RULE 56.1 (N.D. ILL.)

Each movant filed a respective statement of uncontested material fact pursuant to Local

Rule 56.1 (N.D. Ill.).   Each movant also provided Plaintiff a "Notice to Pro Se Litigant Opposing

Motion for Summary Judgment," as required by circuit precedent.   Those notices explained in

detail the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert

the facts as set forth in the moving party's statement results in those facts being deemed admitted.

*See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
>
> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (C) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b)(3).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

2

Here, Plaintiff responded to the Defendants' uncontested statements of material fact. However, several of his responses fail to comply with Local Rule 56.1. For example, Plaintiff attempts to dispute several of the Defendants' proposed facts by citing to Exhibit G, which is composed of eight pages of his deposition testimony. While Plaintiff has underlined certain testimony throughout the eight pages, he only references Exhibit G in his responses. As another example, Plaintiff's Exhibit F includes 15 pages of different documents, including grievances Plaintiff filed, responses to the grievances, pages of Plaintiff's deposition testimony, and a newspaper article. Plaintiff attempts to refute some of Defendants' proposed facts with a general citation to Exhibit F. Plaintiff's general citations to lengthy exhibits are insufficient. *See Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (finding citations to a lengthy exhibit are not specific for denying a factual allegation by the movant for summary judgment); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). In other responses, for example the Medical Defendants' proposed fact No. 25, Plaintiff neither admits nor denies the proposed fact; instead, he comments on the proposed fact and fails to support his additional comment with citation to any supporting material.

Plaintiff also submitted additional statements of material fact in his responses. However, with the exception of one proposed additional statement of material fact in each of his responses, Plaintiff failed to reference any materials to support his proposed additional facts. In addition, he cites only generally to his multi-page exhibits in support of each of his proposed additional facts. Thus, Plaintiff has failed to comply with Local Rule 56.1(b)(3)(C).

3

Accordingly, the Defendants' proposed uncontested statements of material facts that are not properly disputed are deemed admitted. In addition, Plaintiff's proposed additional facts are not considered by the court. Nevertheless, as Plaintiff is proceeding *pro se*, the court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials to the extent that he could properly testify about the matters asserted. *See* Fed. R. Evid. 602; *see also Berry v. Chicago Transit Authority*, 618 F.3d 688, 691 (7th Cir. 2010) (non-movant's uncorroborated testimony may raise a genuine issue of material fact if it is based on personal knowledge or firsthand experience).

## BACKGROUND

Plaintiff was an inmate at the Stateville Correctional Center at all times relevant to this action. (Med. Defs.' 56.1(a)(3) Statement ¶ 1.) Defendant Warden Hardy was the Warden at Stateville at all times relevant to this action. (*Id.* at ¶ 2.) Dr. Schaefer and Dr. Ghosh were physicians employed by Wexford Health Sources, Inc., a corporation that staffs healthcare departments in correctional centers, at all times relevant to this action. (*Id.* at ¶¶ 3-5.)

The meat products that Plaintiff was provided as part of his diet at Stateville contained soy. (Med. Defs.' 56.1(a)(3) Statement ¶ 8.) At all relevant times, Stateville followed the American Dietary Association (ADA) standards for composition of meals. (*Id.* at ¶ 11.)

Plaintiff alleges that soy in the meat products caused him to experience digestive issues, including pain and rectal bleeding, a "couple of hours after [he] ate it." (Med. Defs.' 56.1(a)(3) Statement ¶ 9.) Plaintiff does not have an allergy to soy. (*Id.* at ¶ 17.) Plaintiff admits that no medical professional has ever told him that the soy in his diet was the cause of his stomach pain or

blood in his stool. (*Id.* at ¶ 16.) The most likely cause of Plaintiff's digestive issues was ultimately identified as hemorrhoids, not soy. (*Id.* at ¶ 20.)

On March 1, 2011, at 9:15 a.m., Plaintiff complained to a certified medical technician (CMT) that he was experiencing lower abdominal pain. (Med. Defs.' 56.1(a)(3) Statement ¶ 23.) The CMT immediately transferred Plaintiff by wheelchair to urgent care for evaluation by a physician. (*Id.*) At 9:30 a.m., Dr. Schaefer performed a history and physical examination of Plaintiff. (*Id.* at ¶ 24.) Plaintiff complained of blood in his stool. (*Id.*) Dr. Schaefer's examination revealed normal vital signs and left lower quadrant pain without rebound or masses present. (*Id.*) Dr. Schaefer's assessment was to rule out irritable bowel disease versus hemorrhoids. (*Id.*) Dr. Schaefer ordered monitoring for a 23-hour period, an imaging study of Plaintiff's abdomen, and lab studies. (*Id.* at ¶ 25.)

At 2:00 p.m., a nurse evaluated Plaintiff and noted that he had intermittent abdominal pain and tenderness to palpation without guarding. (Med. Defs.' 56.1(a)(3) Statement ¶ 26.) Plaintiff was instructed to save his stool for examination. (*Id.*) Dr. Schaefer reevaluated Plaintiff at 2:30 p.m. (*Id.* at ¶ 27.) Dr. Schaefer noted that Plaintiff had blood on a piece of toilet tissue. (*Id.*) Dr. Schaefer revised his plan to wait for the results of the previously ordered labs to determine blood loss, ordered Tylenol for pain, ordered Colace to soften Plaintiff's stool, and recommended continued monitoring of Plaintiff's stool. (*Id.* at ¶ 28.) At 4:00 p.m., Plaintiff was evaluated by a nurse. (*Id.* at ¶ 29.) The nurse observed blood on a toilet tissue and noted that Plaintiff denied abdominal pain at that time. (*Id.*)

5

On March 2, 2011, at 11:40 a.m., Dr. Ghosh performed a history and physical examination of Plaintiff. (Med. Defs.' 56.1(a)(3) Statement ¶ 32.) Plaintiff complained of blood in his stool and continued left lower quadrant pain, which had subsided. (*Id.*) Dr. Ghosh's exam revealed no guarding, rebound or masses in Plaintiff's abdomen and no visual hemorrhoids. (*Id.*) Dr. Ghosh assessed Plaintiff as having rectal bleeding, possibly related to hemorrhoids. (*Id.*). Dr. Ghosh admitted Plaintiff to the infirmary, continued his regular diet, ordered monitoring of Plaintiff's stool by use of a diaper, and ordered a 30-day supply of Colace and Tylenol.

At 12:20 p.m., a nurse examined Plaintiff, noting that he was in no "apparent acute discomfort," and that there was a small amount of blood on a toilet tissue. (Med. Defs.' 56.1(a)(3) Statement ¶ 34.) Plaintiff also asked the nurse if he could leave the infirmary. (*Id.*) At 4:00 p.m., Nurse Stegall evaluated Plaintiff, who was resting in bed with no apparent distress. (*Id.* at ¶ 30.) Plaintiff denied complaints of rectal bleeding at that time and was instructed to save his stool for examination. (*Id.*) At 5:35 p.m., Nurse Stegall gave Plaintiff a "pad" to monitor the amount of bleeding in his stool. (*Id.* at ¶ 31.)

On March 3, 2011, Nurse Stegall evaluated Plaintiff in the infirmary. (Med. Defs.' 56.1(a)(3) Statement ¶ 35.) Plaintiff had no complaints, no rectal bleeding and no signs of distress. (*Id.*) At 11:30 a.m., another nurse monitored Plaintiff and noted that he had no complaints, no rectal bleeding, and no sign of acute distress. (*Id.* at 36.)

On March 4, 2011, Dr. Ghosh re-examined Plaintiff. (Med. Defs.' 56.1(a)(3) Statement ¶ 37.) Plaintiff reported feeling better and he denied any rectal bleeding. (*Id.*) The physical exam revealed no tenderness, guarding or rebound. (*Id.*) Dr. Ghosh noted that lab results and assessed Plaintiff as having a history of rectal bleeding and hemorrhoids. (*Id.*) Dr. Ghosh ordered Plaintiff's discharge with a prescription for Colace and for Plaintiff to follow up as needed. (*Id.*) Later that day, Plaintiff asked a nurse when he was leaving and requested to be discharged. (*Id.* at ¶ 38.) The nurse noted that Plaintiff had no acute distress. (*Id.*) The nurse provided discharge plans to Plaintiff, who verbalized an understanding of the instructions. (*Id.*) Plaintiff was discharged from the infirmary. (*Id.* at ¶ 39.) Dr. Ghosh was not involved in any aspect of Plaintiff's medical care after March 4, 2011. (*Id.* at ¶ 40.)

Dr. Schaefer examined Plaintiff on March 25, 2011. (Med. Defs.' 56.1(a)(3) Statement ¶ 41.) Dr. Schaefer's noted that Plaintiff was attempting to secure copies of his medical records. (*Id.*) The examination indicated that Plaintiff did not have acute distress and that he was alert and oriented. (*Id.*) Dr. Schaefer assessed Plaintiff as having a history of chronic bloody stools, but "none recently." (*Id.*) Dr. Schaefer opined that "[Plaintiff] no longer appears to have IBD (irritable bowel disease)." (*Id.*) Dr. Schaefer's plan was for Plaintiff to follow up as needed as there was no indication for further treatment at that time. (*Id.*) Plaintiff did not return back to Dr. Schaefer after March 25, 2011, to report new, worsened or continuing abdominal complaint. (*Id.* at ¶ 42.)

Plaintiff filed a grievance regarding medical treatment on August 11, 2010. (Hardy's 56.1(a)(3) Statement ¶ 9.) In the grievance, Plaintiff asked to be placed on a soy-free diet and for

the prison to reinstate a "nutritious" diet for inmates.   (*Id.*)   The Grievance Officer responded to

the grievance, that Plaintiff should make an appointment with the Health Care Unit (HCU) for a

change in his diet.   (*Id.*)   Hardy did not review Plaintiff's grievance.   (*Id.* at ¶ 10.)   Hardy's

designee signed his name and placed his initials after Hardy's name after it was reviewed by the

Grievance Officer.   (*Id.*)   Hardy's designee signed the grievance on March 2, 2011, wherein it

was noted that Plaintiff was seen in the HCU on that same day.   (*Id.*)

Plaintiff filed a grievance regarding his diet on November 21, 2010.   (Hardy's 56.1(a)(3)

Statement ¶ 11.)   In the grievance, Plaintiff asked for a no-meat diet.   (*Id.*)   The counselor

responded to Plaintiff's grievance that vegan meals were not issued by the HCU and that Plaintiff's

records did not indicate a soy allergy.   (*Id.*)   In addition, the counselor reported that, per the

dietary manager, numerous other items that did not contain soy were served.   (*Id.*)   Hardy did not

review Plaintiff's grievance.   (*Id.* at ¶ 12.)   Hardy's designee signed his name and placed his

initials after Hardy's name after it was reviewed by the Grievance Officer.   (*Id.*)   Hardy's

designee signed the grievance on December 30, 2010.   (*Id.*)   In addition, Hardy's designee noted

that the menu composition met or exceeded the dietary allowances by the National Academy of

Sciences.   (*Id.*)   The Agency Medical Director also noted that current extensive literature did not

support the claim that soy diets caused significant medical problems and certainly not at the

concentration it was being served with the Illinois Department of Corrections.   (*Id.*)

Plaintiff filed an Emergency Grievance related to medical treatment on February 28, 2011.

(Hardy's 56.1(a)(3) Statement ¶ 13.)   In the grievance, Plaintiff stated that he wanted to see a

doctor as soon as possible.   (*Id.*)   Hardy did not review the Emergency Grievance; instead,

8

Hardy's designee reviewed the Emergency Grievance. (*Id.* at ¶ 14.) The designee signed the Emergency Grievance on March 2, 2011, at which time Plaintiff was in the HCU. (*Id.*) Up until this time when Plaintiff was in HCU, he had not told anyone that he believed his medical condition was related to soy in his food. (*Id.*)

Plaintiff filed another grievance regarding medical treatment on April 2, 2011. (Hardy's 56.1(a)(3) Statement ¶ 15.) Plaintiff sought medical treatment for his stomach. (*Id.*) Hardy did not review this grievance. (*Id.* at ¶ 16.) Hardy's designee reviewed the grievance and signed it on November 21, 2011. (*Id.*) The designee noted that Plaintiff was in the HCU from March 1 through March 4, 2011, and that he was seen for a follow-up visit with Dr. Schaefer on March 25, 2011. (*Id.*)

Plaintiff filed another grievance asking for proper medical treatment on June 14, 2011. (Hardy's 56.1(a)(3) Statement ¶ 17.) Hardy did not review this grievance. (*Id.* at ¶ 18.) Hardy's designee reviewed the grievance and signed it on May 1, 2011. (*Id.*) The response included a memorandum from the nursing supervisor indicting that the response provided by the counselor was appropriate for the grievance issue. (*Id.*)

Plaintiff filed an Emergency Grievance regarding his medical treatment on September 12, 2011. (Hardy's 56.1(a)(3) Statement ¶ 19.) Hardy did not review this, as Plaintiff sent the grievance to the Administrative Review Board (ARB) in Springfield, Illinois. (*Id.* at ¶ 20.) Sarah Johnson of the ARB returned the grievance due to Plaintiff's failure to provide a copy of his original grievance with a grievance counselor's report and a copy of his original grievance with a Grievance Officer and Chief Administrative Officer's response. (Med. Defs.' 56.1(a)(3)

9

Statement ¶ 46.)

Plaintiff filed another Emergency Grievance on September 21, 2011. (Hardy's 56.1(a)(3) Statement ¶ 21.) In the grievance, Plaintiff requested a better diet and better medical care. (*Id.*) Plaintiff also referenced the medical care he received from Dr. Schaefer in March 2011. (Med. Defs.' 56.1(a)(3) Statement ¶ 47.) Hardy did not review this grievance. (Hardy's 56.1(a)(3) Statement ¶ 22.) Hardy's designee reviewed the grievance and signed it on September 29, 2011, indicating it was not an emergency. (*Id.*)

At no time prior to Plaintiff filing this lawsuit, did Hardy review, nor was he made aware of, Plaintiff's grievances. (Hardy's 56.1(a)(3) Statement ¶ 23.) At the request of the Director of the IDOC, Hardy responded to a letter that Plaintiff had sent regarding a garden at Stateville. (*Id.* at ¶ 24.) Hardy informed Plaintiff that should his suggestion of a garden at Stateville be given consideration, an announcement would be made through a Warden's bulletin. (*Id.*)

Hardy never had a conversation with Plaintiff regarding his medical care. (Hardy's 56.1(a)(3) Statement ¶ 25.) Hardy is not aware of any letters written by Plaintiff regarding his medical care. (*Id.*) Hardy's designees open and review mail that is received due to the number of correspondence Hardy receives. (*Id.*)

Inmates at Stateville may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons. (Hardy's 546.1(a)(3) Statement ¶ 6.) Generally, an inmate must first attempt to resolve grievances through his counselor. (*Id.*) If the grievance issue remains unresolved after such informal efforts, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer. (*Id.*) The Grievance Officer may personally

10

interview the inmate and/or other witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. (*Id.* at ¶ 7.) Grievances regarding medical treatment are forwarded to the facility's HCU for review by medical personnel. (*Id.*) Upon completion of any investigation, the Grievance Officer's conclusions and, if appropriate, recommended relief, is forwarded to the Warden for a decision. (*Id.*) The Warden or the Warden's designee's decision is then submitted to the grieving inmate. (*Id.*) In addition, an inmate may submit and "Emergency Grievance." (*Id.* at ¶ 8.) An Emergency Grievance is reviewed directly by the Warden or his designee. (*Id.*)

<u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

11

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594–595 (7th Cir. 2007), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

<u>ANALYSIS</u>

I.   <u>Failure To Exhaust Administrative Remedies</u>

The Medical Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding the medical care he received. Defendants' motion on grounds of non-exhaustion is

12

denied.

Pursuant to the Prison Litigation Reform Act, exhaustion of administrative remedies is required for all prisoner/detainee suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. *See Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999).

A prisoner must take all the steps required by the institution's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Moreover, exhaustion is a precondition to filing suit, so that a detainee's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *See Ford*, 362 F.3d at 398; *Perez*, 182 F.3d at 536-37.

To exhaust remedies under § 1997e(a) a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See Porter*, 534 U.S. at 524-25.

However, a prisoner need only exhaust the administrative remedies that are "available" to him. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Pozo*, 286 F.3d at 1024-25. A prison employee who prevents a prisoner access to a remedy can render that remedy unavailable, and, under such circumstances, a failure to exhaust

13

would not bar filing suit.   *See   Pavey*, 544 F.3d at 742; *Dale*, 376 F.3d at 656.   Importantly,

failure to exhaust administrative remedies is an affirmative defense; correctional officials have the

burden of proving that the inmate had available remedies that he did not utilize.   *See, e.g., Dole v.*

*Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale*, 376 F.3d at 655.

Dr. Ghosh first argues that Plaintiff failed to name him, directly or by description, in any of

his grievances.   Plaintiff's failure specifically to name Dr. Ghosh in his September 12, 2011,

grievance is not fatal to his claims under the facts of this case.   "[A] grievance suffices if it alerts

the prison to the nature of the wrong for which redress is sought.   As in a notice-pleading system,

the grievant need not lay out the facts, articulate legal theories, or demand particular relief.   All

the grievance need do is object intelligibly to some asserted shortcoming."   *Strong v. David*, 297

F.3d 646, 650 (7th Cir. 2002).   A major purpose of the exhaustion requirement is to give prison

administrators prompt notice of problems, so that they may be corrected internally in the first

instance and an administrative record developed prior to suit.   *Porter, supra*, 534 U.S. at 524-25;

*Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001).

A prisoner need not specify by name each person against whom he addresses his grievance.

*Turley v. Catchings*, No. 03 C 8491, 2004 WL 2092008, at *3 (N.D. Ill. Sep. 15, 2004) (Norgle, J.).

The PLRA statute "does not require a prisoner to name each prospective defendant in his

grievance, even if the prospective defendant was known to the prisoner when the grievance was

written.   A prisoner can 'object intelligibly to some asserted shortcoming' without naming or

blaming anyone; he might, for example, simply complain to the warden that he hasn't been fed for

two days."   *Murray v. Artz*, No. 02 C 8407, 2002 WL 31906464, at *4 (N.D. Ill. Dec. 31, 2002)

14

(Kennelly, J.)

The essential thrust of Plaintiff's grievance was that he was dissatisfied with the medical care he received in early March. Both Dr. Ghosh and Dr. Schaefer provided medical care to Plaintiff during his four-day stay at the hospital. Thus, Plaintiff did not have to specifically name Dr. Ghosh in his grievance.

Dr. Ghosh and Dr. Schaefer also argue that Plaintiff failed to timely grieve his concerns with the medical care provided by Dr. Ghosh and Dr. Schaefer. Dr. Schaefer and Dr. Ghosh provided medical care for Plaintiff's abdominal complaints March 1, 2011, through March 24, 2011. Dr. Schaefer and Dr. Ghosh argue that Plaintiff failed to timely file a grievance regarding their medical treatment because Plaintiff's first grievance related to this medical care in March 2011 was submitted on September 11, 2011. However, Plaintiff filed a grievance on April 2, 2011, in which he complained that he was still having medical issues related to his abdominal complaints and he disputed the doctors' findings in March 2011. While Plaintiff did not specifically name Dr. Schaefer and Dr. Ghosh, he did not need to do so and his grievance sufficiently indicated that he believed he needed more medical treatment and that the diagnosis in March 2011 was incorrect. Thus, Defendants have not demonstrated that Plaintiff's grievance was untimely.

For the above reasons, the Medical Defendants' motions for summary judgment on grounds of non-exhaustion are denied.

II.    <u>Deliberate Indifference to Serious Medical Issue</u>

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs.   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011).   Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need.   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed.   *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005); *Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007).   A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

Under these standards, Plaintiff's abdominal issue that resulted in four days in the hospital was a serious medical condition.

As to the subjective prong of a deliberate indifference to medical needs claim, a prisoner must demonstrate that the defendant in question was aware of and consciously disregarded the inmate's medical need.   *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04; *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Neither

negligence nor gross negligence constitutes deliberate indifference. *Farmer*, 511 U.S. at 836.

Instead, the standard is comparable to that required in demonstrating criminal recklessness. *Id.* at

839. However, a prisoner does not need to prove that the prison official "intended, hoped for, or

desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is

sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of

harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at

1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the

fact of that risk is obvious. *See Walker*, 293 F.3d at 1037. The court examines the totality of the

medical care provided; isolated incidents of delay do not rise to the level of deliberate indifference.

*See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364,

1374-75 (7th Cir. 1997).

Plaintiff essentially argues that his medical issues could have been avoided had he not been

served soy product. He further argues that he did not have a history of hemorrhoids and that the

doctors should have known he was suffering from some other medical abdominal issue due to the

soy product he was forced to consume.

First, Plaintiff has failed to demonstrate that either Dr. Schaefer or Dr. Ghosh was aware

that Plaintiff believed that his medical condition was being caused by the soy in his diet. Plaintiff

never informed either doctor of his belief and he has presented no evidence that either doctor knew

by some other source that the soy in the prison's meals was causing his abdominal issues.

Second, neither doctor was deliberately indifferent to Plaintiff's medical condition. Dr.

Schaefer did not become involved in treating Plaintiff for his abdominal issues until March 1,

17

2011.   At that time, Dr. Schaefer examined Plaintiff, ordered that Plaintiff be monitored for 23

hours, ordered imaging studies of Plaintiff's abdomen, and ordered lab studies.   Dr. Schaefer

examined Plaintiff later that same day and noted blood on toilet tissue.   Dr. Schaefer ordered pain

medication and Colace and ordered that Plaintiff's stool be monitored.   Nurses also evaluated

Plaintiff during this first day in the hospital.

The next day, Dr. Ghosh became involved in treating Plaintiff for his abdominal issues.

Dr. Ghosh examined Plaintiff and assessed him as possibly having hemorrhoids in light of the

exam and Plaintiff's symptoms.   Dr. Ghosh ordered additional monitoring of Plaintiff in the

hospital.   During the next three days, Plaintiff was evaluated throughout the days by nursing staff.

Plaintiff was re-examined by Dr. Ghosh on March 4, 2013, at which time Plaintiff reported feeling

better and   denied any rectal bleeding.   Dr. Ghosh assessed Plaintiff as having a history of rectal

bleeding and hemorrhoids.   Dr. Ghosh ordered additional Colace and for Plaintiff's release with

follow-up as needed.

Plaintiff received follow-up care on March 25, 2011, by Dr. Schaefer.   Dr. Schaefer noted

that Plaintiff did not have acute distress and that he was alert and oriented.   Dr. Schaefer noted

that Plaintiff no longer appeared to have irritable bowel disease and informed Plaintiff to follow up

as needed.   Neither doctor treated Plaintiff for any abdominal issues after this date.

The above totality of care provided by the doctors in March 2011, demonstrates that neither

doctor was deliberately indifferent to Plaintiff's medical needs.   While Plaintiff disagrees with the

doctors' diagnosis of hemorrhoids and argues that they should have done something more to

evaluate his medical condition, his mere disagreement with the doctors' medical judgment does

not constitute deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *see also, Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024 (7th Cir. 1996) (plaintiff's disagreement with the selection of medicine does not constitute deliberate indifference to a serious medical need).

Based on the above undisputed facts, Plaintiff has failed to demonstrate a triable issue of fact as to whether either Dr. Schaefer or Dr. Ghosh was deliberately indifferent to his medical issues in March 2011. Accordingly, summary judgment is granted in the doctors' favor.

III. <u>Wexford's Liability as to Plaintiff's Medical Care</u>

Because the court finds that Drs. Schaefer and Ghosh did not violate Plaintiff's Eighth Amendment rights, Wexford cannot be liable for an allegedly ineffective custom or policy of providing overall medical care to prisoners. In analyzing a Section 1983 claim against a private corporation, the court uses the same principles that would be applied in examining claims against a municipality. *Brown v. Ghosh*, No. 09 C 2542, 2010 WL 3893939, *8 (N.D. Ill. Sep. 28, 2010) (Feinerman, J.), citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). Therefore, an inmate bringing a claim against a corporate entity for a violation of his constitutional rights must show that the corporation supports a "policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Brown*, 2010 WL 3893939, at *8, quoting *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (in turn quoting *Estate of Novack ex rel. v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)) (a corporate defendant violates an inmate's rights "if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners"). "It

19

is well established that there can be no municipal liability based on an official policy under *Monell*
[*v. Department of Social Services*, 436 U.S. 658 (1978)], if the policy did not result in a violation
of a plaintiff's constitutional rights." *Houskins v. Sheahan*, 549 F.3d 480, 493-94 (7th Cir. 2008)
(quoting *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007)).   The court
therefore has no occasion to consider any broad claim against Wexford.

IV.   <u>Deliberate Indifference by Warden Hardy</u>

Plaintiff has also failed to demonstrate that Warden Hardy was deliberately indifferent to
his serious medical issue.

Plaintiff argues that Warden Hardy was deliberately indifferent to his serious medical
needs because he repeatedly denied his grievances related to his medical issues and his diet.
However, as set out fully above, Warden Hardy did not review any Plaintiff's grievances.
Instead, as allowed by policy, Warden Hardy's designee reviewed Plaintiff's grievances.   Thus,
knowledge on Warden Hardy's behalf of Plaintiff's medical condition and diet cannot be based on
grievances that Warden Hardy had no knowledge of and did not review.

Moreover, an administrative official is generally shielded from liability where, as here, a
plaintiff is receiving ongoing care from health care professionals.   *See, e.g., Johnson v. Snyder*,
444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the
medical staff insulated the warden from liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56
(7th Cir. 1999) (warden was required to act where officials allegedly denied an inmate
life-sustaining medication and food).   "The Governor, and for that matter the Superintendent of
Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the

20

provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Plaintiff also argues that Warden Hardy knew of the dangers of consuming too much soy because literature existed regarding such and because the warden issued a bulletin regarding a gastrointestinal illness cluster at the prison in December 2011. First, while Plaintiff has submitted articles discussing too much soy being fed to inmates from several sources, he has failed to demonstrate that Warden Hardy knew of these articles or had read the articles. Second, the bulletin regarding an outbreak of a gastrointestinal illness at the prison in December 2011, relates to an outbreak caused by a virus or bacteria as demonstrated by the statement within the bulletin that the illness is being transmitted via a fecal-oral route and not by air.

Thus, Plaintiff has failed to demonstrate that Warden Hardy had knowledge of Plaintiff's medical condition, of the medical care he was receiving, or that too much soy in the prison food was causing medical issues. Accordingly, summary judgment is also granted in Warden Hardy's favor.

CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted. Even viewing the summary judgment record in the light most favorable to Plaintiff, the court concludes that no reasonable person could find that Defendants acted with deliberate indifference to Plaintiff's medical needs.

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed.

R. App. P. 24(a)(1)(C).   If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.   *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998).   Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g).   Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.   *Id.*

IT IS THEREFORE ORDERED that the Defendants' motions for summary judgment [84], [89] are granted.   The Clerk is directed to enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 56.   The case is terminated.

ENTER:

JAMES F. HOLDERMAN
United States District Court Judge

Date:   October 25, 2013

22